I believe I fixed the problems yes wonderful I want to apologize for the difficulties and thank the court for the flexibility and allowing us to go a little bit later no problem go ahead may it please the court my name is Elizabeth Johnson and I'm representing the appellant here Yordania Herrera-Cleto who is challenging the district courts denial of her petition for a writ of error quorum nobis challenging her conviction of alien smuggling there are three requirements for granting a writ of error the first is that the petitioner is currently suffering a legal consequence which will be relieved by the granting of the petition the second is that granting the petition is necessary to achieve justice and the final one is that there was no unreasonable delay in bringing the petition as for the requirement of conviction the government concedes and the district court properly found that that requirement has been satisfied if the conviction is vacated Ms. Herrera-Cleto will be relieved of the significant legal consequence of mandatory deportation resulting from her conviction the writ is also needed to achieve justice because Ms. Herrera-Cleto's conviction was obtained because when she had ineffective assistance of counsel specifically she had given inaccurate and misleading advice as to the immigration consequences of her plea and the law in this area has been the Supreme Court has addressed in Strickland in Padilla and in Lee there are two requirements first that the counsel's conduct be objectively unreasonable and second that the defendant was prejudiced by that ineffective advice and in this case the district court properly found that the advice that Ms. Herrera-Cleto received was objectively unreasonable she pled guilty to a misdemeanor alien smuggling and however even though it is a misdemeanor under immigration law this is an aggravated felony and deportation is mandatory for anyone who is an alien who's convicted of such crime even would you agree that even where deportation is mandatory there may be some mechanisms to avoid deportation theoretically there may be and there may be in some cases but there were not here there is an automatic for this for this particular crime there is a provision for relief if the alien who was smuggled as a family member but in this case Ms. Herrera-Cleto was transporting the father of her child who was not her legal spouse so she was not eligible for that form of relief the government has suggested that there's relief in terms of refugee status or the Convention against Torture but frankly those are available to virtually every person in deportation proceedings and the courts have held the Supreme Court in Padilla and this court in Halleby pretty specifically that if you are mandatorily if your deportation is under law presumptive and mandatory you need to be told that you need to be told that the presumption is that you are going to be deported and what she was told was well you might be her lawyer on the record there is there is the letter from Immigration Council which uses the phrase mandatory there's no evidence whatsoever that that information was conveyed to Ms. Herrera-Cleto at any point prior to her plea and in fact the petition that was filed specifically says that she was told that she was not definitely going to be deported that she was eligible for that there was a possibility that she was eligible for relief and what about why don't you turn to prejudice I mean certainly your honor what is there in the record to show that she would not have pled guilty if she had been told that deportation was mandatory well I think the clearest I think there are two things to look at and one is obviously in her petition again Ms. Herrera-Cleto stated under oath that had she understood that that was what the result of her misdemeanor plea was she would have chosen to go to trial and second the other issue is that it is made clear when she's pleading guilty her lawyer says immigration consequences are something she has been concerned with he said she's not concerned with it today the read but what he doesn't talk about is the fact that the reason she's not concerned about it today is you know we've told her that she has that she has a chance to not be deported it's we haven't told her it's mandatory we haven't told her it's presumptive her understanding is that she might or might not get deported and with that information which is incorrect when she pleads guilty in her mind she isn't raising the issue because as far as she's concerned she's already dealt with it she told her lawyer she was concerned about it and maybe this is the wrong way to put it or to frame it but it was there any chance that she could avoid a conviction for an aggravated felony because I haven't for example seen on this record any author of the lesser charge any possibility of a lesser charge so yes your honor I mean this is where I think the the recent decision in Lee is so important and Lee the standard as articulated in Lee isn't really addressed in the lower court in this case and understandably it wasn't brief because the district court decides and what Lee says pretty clearly is that yeah usually and in most of these cases what your honor is pointing out is has been the standard which is you have to you have to show that you could have gotten a more favorable plea or you could have you had a valid defensive trial right Lee says is those aren't the requirements the requirement is subjectively what would this defendant have actually decided and it says very clearly some defendants even with little or little chance of success at trial are going to choose to roll the dice because if what they're looking at is a plea with mandatory deportation so there's a difference between zero chance and little chance correct that's what that's what Chief Justice Roberts I think identifies but exactly what I'm asking you is I don't even see a little chance I see zero chance I don't understand why I don't think Ms. Herrera-Clito has less chance than the defendant did in Lee who I believe was on wiretaps selling drugs the evidence was extremely clear in Lee and he was still allowed to just to make that chance and I would say that Ms. Herrera-Clito frankly the case is not is a sympathetic case for a jury because of what happens the person she's child he's been in communication with her and he tells her that he wants her to at least this is the way it's portrayed by the government he wants her to come get her to come get him she's riding in a car someone else is driving they don't bring him over the border they pick him up in the Seneca Rez close to the border and then they're stopped I don't think that evidence is worse than the evidence was in Lee and in Lee Chief Justice Roberts you're correct says very clearly he can decide that he's willing to take a chance because I think one thing that we all know is juries do weird things sometimes and if that's a choice that he wants to take he can take it I mean they say that he essentially is a defendant with no viable defense and that he would read and that it was acceptable for Lee to say that he would have rejected any plea in the favor of throwing a Hail Mary at trial and that's exactly what you're saying is the same situation here I think we can all agree that maybe it wouldn't have been the smartest choice for her but it's a choice that she gets to make and she didn't get to make it because she wasn't properly advised by her lawyer what her actual choices were one other factor that I wanted to turn to is the question of unreasonable delay clearly Missouri Araclito has no idea what the consequences are to her until she's put in deportation proceedings and at that she understands that her deportation is mandatory so she couldn't have been expected to do it sooner than that she does take some time after that before the petition is filed I would point to this court's decision in Kovacs which allowed a certain amount of delay a similar delay I'm pointing out that the the only remedy available here is the writ of error quorum novus which is an arcane remedy a lot most I would be willing to bet that no lay people know about it a lot of lawyers don't this is maybe the second time I've dealt with one in my career I would also say that one of the factors in concerning whether the delay is unreasonable is whether it's being done for some kind of tactical advantage she gained no tactical advantage by waiting on her deportation proceedings were not stayed they continued everything happened exactly the same as if she had whether she had brought the petition or not bringing it earlier wouldn't have helped her more and it wouldn't have hurt it wouldn't have hurt her it wouldn't have helped in the deportation proceedings either they can go forward or they can't all right you you have two minutes for rebuttal we'll hear from the government thank you your honor may it please the court Rajiv dosanjh for the government this court should affirm the denial of the defense petition for quorum novus relief because as the courts below found the defendant failed to establish prejudice from her attorneys alleged misadvice the defendant failed to show a reasonable probability either that she would have negotiated a plea that did not impact her immigration status or that she would have gone to trial despite the overwhelming evidence and despite the increased risk of incarceration the Supreme Court and Lee required more than after the fact of assertions from the defendant that she would have gone to trial had she known deportation was mandatory that is really all the defendant here has provided what did it what more did it require it requires your honor requires contemporaneous evidence of the overriding importance that the defendant would have placed on avoiding deportation and in all the cases that are cited in these briefs you have that where where you find quorum novus relief is appropriate or you find an effective assistant there that there is in the record the suggestion that she had a concern the concern was a lay to some extent because she wasn't told that it was mandatory she had a US born son or US born child don't all those factors suggest that this was important to her I mean your honor I would suggest they do not first of all I think the defendant here is misread the record what the defense counsel stated was at the time of the plea miss Herrera-Claytoe had two concerns one about the nature of the charge against her and two about the potential sentence he then stated very clearly that the deportation consequence was not a concern of hers today but he wanted to put this on the record and this dovetails with the fact that we have no evidence that he goes on to say I want to put on the record that the charge would make her deportable but it doesn't necessarily mean she would be deported correct your honor that's what he's saying to the court we hear your I think what's what's gone on is that defendants have ignored the burden that they have and if you look at the what evidence they gave to the district court magistrate judge there's no absolute no evidence of what communications she had from her attorney privileged communications that she had either from her defense counsel or from the immigration attorney that she hired there's no affidavit there's no declaration that not right and that distinguishes this case from from all the cases really that that where you find ineffective assistance or where you remand for further proceedings there was just no effort here to really nail down what she was told and given the letter given given there is a lack of clarity in the record given that all of this occurred before Lee was decided what about a remand for a hearing on what exactly she was told what was going on in her head and then let the trial court decide what actually happened I think again it's it's the burden of the defendant here below to provide some basis and in Rodriguez this court and believe you're on the panel your honor you remanded for a hearing but you remanded for a hearing because there is the contemporaneous evidence at the hearing that the defendant has expressed that the defense counsel made very clear that the avoiding removal from the country is of primary importance there's none of that here there's there's really no attempt below to make a record that could even get to the point of a hearing and you're on a match that match straight judge Hummel he did decide the case with the benefit of Lee and there was no request for a hearing below that's my question was there ever a request for a hearing below and there is no request for a hearing frankly on appeal what it was her choice to say that the papers are sufficient and that's what the magistrate judge decided with the benefit of Lee and again I think that would also not get to the other problem here which is that there's there's really no chance that she would have received a plea that would have avoided the immigration consequences she as the defense counsel points out she's not eligible for the exception under the aggravated felony definition for this crime and she got really the best deal she could so I had to reread the because it's a little puzzling to me analytically it seems to me that if we're talking about Hail Mary's in every case would permit of a defendant who says why not the jury might nullify and that can't be what Lee is getting at that space between no chance and little chance I think what what how Justice Roberts Chief Justice Roberts addresses this is he says that this is a unique case because we have such clear evidence at the time of the plea that the deportation so that gives substance to the after-the-fact assertion that I would not have taken a plea or change my plea to guilty if I had even the smallest chance of winning a trial and and I think Justice Roberts is is he makes the point that you have to look at what the defendant could have could have thought that perhaps there's a small chance but because deportation is so that's a rational position but it's still the burden of the defendant to point to contemporaneous evidence and and Justice Roberts Chief Justice Roberts is very clear to distinguish Lee as a unique case because you have such clear evidence you had that also in Rodriguez where you remanded and in all the cases that I've seen your honor where they find ineffective assistance you you have a basis for finding that deportation was the overriding concern and turning your honor to the her circumstances I it's as we discussed in the brief she I think her personal circumstances actually weighed against finding that deportation was her overriding concern she had a very small child at the time incarceration would have required her separation from that child she got the benefit of getting a acceptance of responsibility credit that that made probation within guideline sentence and that's a substantial benefit that she got that avoided incarceration and if you look at the circumstances in in other cases such as Lee in the Rodriguez case in the in the another case is this is not a case where the defendant came here as a young child and has really no connection to the to her home country she came here as an adult she'd been in the country seven years at the time of her plea but she has family back in the area sure her the child's father will be deported back to the Dominican Republic he was once and tried to reenter again got a more public mother lives in Puerto Rico which is obviously closer to the Dominican Republic so for those reasons we think that here she's not established prejudice I understand on the issue of deficient performance the government has a much tougher road to hoe given the statements of the council on the record about what he thought the immigration or or or what how he describes it the but the fact remains the defendant's asking this court to take this significant step of overturning a very long final guilty plea based on alleged misadvice from her attorney without ever specifying what that advice what advice she received and again the fact that she hired immigration attorney from who clearly stated ten weeks before what if the affidavit what if the affidavit had just hypothetically he told me exactly what he said on the record your honor that I think we would we would not be fighting I think that that that would be deficient advice I think what we're not we're not really you know really fight you're not really fighting it anyway well I'm not fighting that hard I've seen you fight hard you're not fighting this issue that I think it's it's more that the that I'm what I'm pressing here is her burden and and her failure to meet the burden and I think it's it's met in many other cases where through a simple affidavit either from the defendant a more detailed one or from her attorney and especially here would have been helpful to hear from the immigration attorney who's advising her it's also I think misstated in the defendant's brief that that immigration attorney was hired by her defense counsel she was he was retained separately as made clear from in the letter the first line of the letter finally as to the delay your honor I I again I think the magistrate judge overlooked the fact the government was contesting that the delay was was unreasonable here and I would just like to correct one mistake in my brief on page 50 I unfortunately miscounted the months it's actually was 21 months from the time she received the notice to appear which stated you're subject to mandatory deportation to the time of her filing of her quorum novus petition I misstated that later in the brief I had stated correctly earlier in the brief and in Rodriguez's case where the where this court remanded the delay was only five months and there's no explanation that the defendant gives for why she couldn't have sought habeas relief she was under probation for for a significant period of time after receiving the notice to appear she could have filed a habeas and that doesn't justify moving directly to the extraordinary relief of quorum novus when it's really was her responsibility to not make that a necessity and that's the standard your honor if she had other forms of relief that she could have pursued earlier she does not get to use the extraordinary rate of quorum novus unless there's other questions your honor I'll rest on the arguments in our brief thank you we'll hear the rebuttal miss I just would like to point to a couple of things in the record miss Herrera-Cledo's petition is in the record and it is a verified petition at a 32 in the meeting a 32 she swears to everything that is set forth in the petition and one of the things that she said that is set forth in the petition is petitioners counsel advised her to plead guilty and that she would potentially be eligible for relief from removal proceedings if they were ever initiated against her and also that she was never advised that her conviction would make her an aggravated felon and ineligible for all forms of discretionary relief so she is pretty clear what she was told she is told that she has the opportunity that why that she's pleading to a misdemeanor she's never told she's going to be mandatorily removable and she is told that she's got options for relief so what page is that 832 832 is the verification but the part that I was just reading your honor is at 825 oh it's I mean it's it's not the most artful pleading in that basically the the lawyer puts in his his statement his affirmation in support of the petition saying that this is what the petitioner has told him and then the petitioner separately verifies it and one thing I would point out you know there's a lot of reliance here on this letter from the immigration lawyer that should have put her on notice on letters in English misery Rokito does not read or speak English I will tell you you know she she she is a Spanish speaker she has a lot of difficulties in English so it's not as simple as well obviously you would have seen this letter and you would have understood it it would have had to have been either translated for someone would have had to read it to her and explain it to her in Spanish or it would have had to have been translated into Spanish there's no indication that that ever happened what we all we know is her saying I was told I would be eligible for relief I was never told this is an aggravated felony that may be mandatorily deportable had I known that I would have proceeded differently and what Lee is saying and it's been talked about in this circuit in Lozano and in very specific question is this particular person what would they have done had they been properly advised and she clearly wasn't properly advised she clearly didn't get to make an informed decision does it matter that this is a writ of quorum nobis that that's the relief you seek as opposed to I can't remember what it wasn't Lee but does that matter I don't believe so because I in all of the decisions that are the the decisions that I've looked at that are addressing quorum nobis petition they apply exactly the same in effectiveness standard as in Strickland and Padilla they don't may differentiate what it is there this and in fact the Second Circuit has said that one of the bases for determining that the writ is necessary to achieve justice is is a determination that the underlying conviction was obtained in violation of the Sixth Amendment right to counsel including the right to effective assistance so no there's not a different standard in determining whether the all right thank you both the court can I say just can I say just one one thing because listening here I I think the just for me I think the quality of counsel on both sides of what might other people might consider a minor case is extraordinary and I think the panel is and should be very very proud of it thank you thank you your honor we are